UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WILLIAM R. THOMPSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 1:24-cv-12664-IT |
| NAVIENT SOLUTIONS, LLC, and | * | |
| NELNET SERVICING, LLC, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

April 6, 2026

TALWANI, D.J.

Pending before the court are Defendants Navient Solutions, LLC's ("Navient") and

Nelnet Servicing, LLC's ("Nelnet") Motions to Dismiss [Doc. Nos. 14 and 16] seeking dismissal

pursuant to Fed R. Civ. P. 12(b)(6) of Plaintiff William R. Thompson's *pro se* Verified

Complaint [Doc. No. 1]. For the following reasons, Defendants' Motions to Dismiss are

GRANTED.

## I.    Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth

of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson

v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain

sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion

to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to

raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In general, a complaint filed *pro se* is "liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). That does not mean that *pro se* plaintiffs need not plead facts sufficient to state a claim, but it does afford them some leniency when facing a motion to dismiss. See Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980).

II.     **Factual Background as Alleged in the Complaint**

Plaintiff alleges that he took out student loans from the U.S. Department of Education, Navient, and Nelnet, between 1986 and 1989, and again in 2012. Verified Compl. ¶ 9 [Doc. No. 1]. Plaintiff alleges further that the U.S. Department of Education is in the business of issuing and managing loans, and that Nelnet and Navient are "[m]anager[s] and collector[s] of debt on behalf of the U.S. Department of Education[.]" Id. ¶¶ 5, 6.[1]

For many years, Plaintiff made payments on his student loans, but because of health issues and loss of employment was unable to continue making consistent payments, making payments only when he was able to do so. Verified Compl. ¶¶ 13, 15 [Doc. No. 1]. After Defendants hounded Plaintiff for years in attempts to collect repayment, Plaintiff agreed to enter a new agreement with Defendants as soon as Plaintiff's income allowed him to do so, and Defendants agreed to withdraw multiple derogatory marks from Plaintiff's credit reports regarding Plaintiff's unpaid loan balances. Id. ¶¶ 10–12, 181, 185. Plaintiff alleges that

---

[1] Plaintiff named the Secretary of the U.S. Department of Education as a Defendant in this action but failed to complete service. Accordingly, the court dismissed Plaintiff's claims against the Secretary without prejudice. Electronic Order [Doc. No. 32].

Defendants never investigated his income, did not withdraw the derogatory marks on Plaintiff's credit reports, and did not send him notes memorializing the new agreement between the parties. Id. ¶¶ 11, 14.

Plaintiff regularly informed Defendants of his declining health. Id. ¶ 17. Defendants' employees continued to contact Plaintiff seeking repayment through hundreds of phone calls, letters, and emails. Id. ¶ 23. Plaintiff alleges that—though his loans to Defendants contained a hardship provision which noted that his "student loans could be discharged . . . 'if repayment would create a hardship on the debtor'"—Defendants did not inform Plaintiff that he was eligible for hardship forgiveness, examine Plaintiff's financial circumstances, or investigate Plaintiff's ability to pay his debt or his claim of having no income. Id. ¶¶ 20, 24, 26, 29.

On February 6, 2017, Plaintiff retired due to his age and physical disability. Id. ¶ 28. On or about December 2017, Plaintiff was diagnosed with cataracts and again notified Defendants of his deteriorating health. Id. ¶¶ 30, 31, 33. Plaintiff alleges that Defendants did not make note of Plaintiff's physical hardships in his file. Id. ¶ 40.

In 2020, Plaintiff informed Defendants that he was no longer able to repay his loans. Id. ¶ 43. Defendants were amenable to a new payment plan but did not agree to absolve Plaintiff of his existing loan obligation. Id. ¶ 44. Plaintiff further alleges that he requested Defendants "that [his] debts not be reported negatively" on his credit reports but derogatory marks have continued to be reported on his credit reports to this day. Id. ¶ 51. Plaintiff has also asked repeatedly to receive an accounting of his student loans from the Defendants but since 1999 (or 2014) has not been provided such records. Id. ¶¶ 47–48.

Plaintiff is now 70 years old and has recently experienced numerous, significant health challenges, including a heart attack and open-heart surgery. Id. ¶¶ 57–58, 60. His income is

limited to social security benefits, and he struggles to afford food and basic costs of living. Id. ¶ 65. Plaintiff accordingly is unable to pay his loans. Id. ¶ 60.

Plaintiff alleges Defendants have continued to call, email, and write to Plaintiff to pursue loan repayment. Id. ¶¶ 56, 69. He notes Defendants have not inquired about Plaintiff's age, health, or income since he first took out these loans in the 1980's. Id. ¶¶ 20, 24, 26, 39, 52. Additionally, Plaintiff alleges that despite having over the years informed Defendants he was unable to work or repay his loans, Defendants never advised Plaintiff that he was possibly eligible for a hardship discharge pursuant to the hardship provision of his loan agreement, nor did they encourage him to apply for loan forgiveness. Id. ¶¶ 18–19, 27, 29, 35–37.

Plaintiff alleges that because of Defendant's constant communications while he has been unable to repay these loans, he has suffered stress, inability to sleep, humiliation, inability to travel or tend to his own well-being, and inability to enjoy his usual activities. Id. ¶¶ 66–67, 95, 109–111, 120.

## III.    Discussion

Plaintiff has brought nineteen claims against Defendants Nelnet and Navient. The court addresses each claim in turn.

### A.    *Count I: Breach of Contract*

Count I of Plaintiff's complaint alleges Defendants breached the parties' contract. Verified Compl. ¶¶ 79–80 [Doc. No. 1].

To state a claim for breach of contract under Massachusetts law, a plaintiff must "show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013) (citing Singarella v. City of Boston, 342 Mass. 385, 387, 173 N.E.2d 290, 291 (1961)).

4

Plaintiff alleges that he entered into a contract with the "U.S. Department of Education and its agents" (who the court understands to be Nelnet and Navient) in 1989 and 2012. Verified Compl. ¶¶ 77, 83 [Doc. No. 1]. But even if the court could construe this allegation as sufficiently alleging that a contract or contracts existed between Plaintiff and Navient or Nelnet, Plaintiff's allegations that he fully performed his duties and responsibilities and that Defendants breached that contract are insufficient where Plaintiff does not specify what contract term he satisfied and what contract terms were breached by the Defendants. Plaintiff's assertion that Defendants "breached the contract by engaging in the civil wrongs and tortious behavior" described earlier in the Complaint, id. ¶ 80, is too vague to further his claim.

Accordingly, Count I is DISMISSED as to both Defendants.

B.      *Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing*

Plaintiff alleges that Defendants violated the implied covenant of good faith and fair dealing. Verified Compl. ¶¶ 82–87 [Doc. No. 1].

Every contract contains an implied covenant of good faith and fair dealing, which requires that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to its fruits of the contract[.]" Druker v. Roland Wm. Jutras Associates, Inc., 370 Mass. 383, 385, 348 N.E.2d 763, 765 (1976). The purpose of the covenant is not to "create rights and duties not otherwise provided for in the existing contractual relationship," but to ensure that the "parties remain faithful to the intended and agreed expectations of the parties in their performance." Uno Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385, 805 N.E.2d 957, 964 (2004).

Assuming that Plaintiff has sufficiently alleged the existence of a contract, Plaintiff has not sufficiently alleged what actions by Defendants injured his rights to the fruits of his contract.

5

At most, Plaintiff appears to suggest Defendants failed to inform Plaintiff that he was eligible for hardship forgiveness. Id. ¶¶ 62–63. But Plaintiff has provided no basis for the court to conclude that Defendants had a duty to investigate Plaintiff's eligibility for potential relief, to inform Plaintiff of his eligibility, or to modify the payment terms. See George v. Stonebridge Mortg. Co., LLC, 988 F.Supp.2d 142, 150 (D. Mass. 2013) (dismissing a claim for breach of the implied covenant of good faith and fair dealing where plaintiffs failed to allege that defendants were under any obligation to modify their mortgage terms). Where Plaintiff cannot establish that Defendants acted in a manner that interfered with the intended and agreed upon expectations of the parties, Count II is DISMISSED.

     C.     *Count III: Negligent Misrepresentation*

To state a claim for negligent misrepresentation, a plaintiff must plausibly allege that the defendant:

> (1) in the course of its business, (2) supplied false information for the guidance of others[,] (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others, (5) by their justifiable reliance upon the information, and (6) that it failed to exercise reasonable care or competence in obtaining or communicating the information.

Cummings v. HPG Intern., Inc., 244 F.3d 16, 24 (1st Cir. 2001).

Plaintiff states generally that Defendants made "oral and written statements in letters, text messages and voicemail messages to plaintiff which . . . negligent[ly] misrepresented the factual reality[.]" Verified Compl. ¶ 89 [Doc. No. 1]. Where Plaintiff does not specify what those statements were, or in what way they were false, he has not plausibly alleged that Defendants supplied false information. Accordingly, Count III is DISMISSED.

6

D.    *Count IV: Invasion of Privacy*

Plaintiff contends Defendants have invaded his privacy by "constantly publishing private and false facts" about Plaintiff, including by misrepresenting Plaintiff's "credit standing." Verified Compl. ¶ 100 [Doc. No. 1]. Plaintiff additionally alleges Defendants invaded his privacy by depicting Plaintiff in a false light. Id. ¶ 101.

There is no common-law claim for invasion of privacy in Massachusetts. Alberts v. Devine, 395 Mass. 59, 69–70, 479 N.E.2d 113, 120–21 (1985); Hayes v. Mirick, 378 F. Supp. 3d 109, 116 n.2 (D. Mass. 2019). Massachusetts, however, does provide for a statutory invasion of privacy claim under Mass. Gen. Laws ch. 214 § 1B. Spencer v. Roche, 755 F. Supp. 2d 250, 271 (D. Mass. 2010), aff'd, 659 F.3d 142 (1st Cir. 2011).[2] The statute provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." Mass. Gen. Laws ch. 214, § 1B. Accordingly, the statute "protects people from 'disclosure of facts . . . that are of a highly personal or intimate nature when there exists no legitimate, countervailing interest.'" Dasey v. Anderson, 304 F.3d 148, 153–54 (1st Cir. 2002) (citing Bratt v. Int'l Bus. Machs. Corp., 392 Mass. 508, 518, 467 N.E.2d 126, 133–34 (1984)). At the same time, "serious or substantial interferences which are reasonable or justified" are not prohibited. Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 518, 567 N.E.2d 912, 914 (1991). "Massachusetts does not recognize a cause of action for false light invasion of privacy." Dasey, 304 F.3d at 154.

---

[2] Though Plaintiff does not assert a claim under this statute, federal courts may recharacterize the legal label attached to a *pro se* litigant's motion to avoid unnecessary dismissal. Greenspan v. Masmarques, 2024 WL 1258062 at *16 (D. Mass Mar. 25, 2024) (citing Castro v. United States, 540 U.S. 375, 381–82 (2003)). The court does so here.

Here, Plaintiff does not plausibly allege that Defendants engaged in an "unreasonable, substantial or serious interference" of Plaintiff's right to privacy. See Mass. Gen. Laws ch. 214, § 1B.

Moreover, even if Defendant's credit reporting would fall under this category, such a claim is preempted by the Fair Credit Reporting Act ("FCRA"). Under 15 U.S.C. § 1681t(b)(1)(F), the FCRA preempts state law "relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F); Clark v. Zwicker & Assocs., P.C., No. 22-CV-10931-ADB, 2024 WL 2025568, at *6 (D. Mass. May 7, 2024). This provision therefore precludes Plaintiff's claim under M.G.L. 214 § 1B. Count IV is therefore DISMISSED.

E.      *Count V: Intentional Infliction of Emotional Distress*

Under Massachusetts law, to state a claim for Intentional Infliction of Emotional Distress ("IIED") a complaint must allege (1) that the defendant intended to inflict emotional distress or that they knew or should have known that emotional distress was the likely result of their conduct; (2) that the conduct was "extreme and outrageous"; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable man could be expected to endure it." Agis v. Howard Johnson Co., 371 Mass. 140, 144–45, 355 N.E.2d 315, 318–19 (1976). "The standard for making a claim of intentional infliction of emotional distress is very high[.]" Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996). Accordingly, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

a civilized community." Foley v. Polaroid Corp., 400 Mass. 82, 99, 508 N.E.2d 72, 82 (1987)

(quoting Restatement (Second) of Torts § 46 cmt. d (A.L.I. 1965)).

In support of his claim for IIED, Plaintiff states that Defendants "engaged in a 30 year

long and regular pattern of intentional outrageous and extreme conduct" but provides no details

as to what this conduct was beyond the phone calls, emails, and writings to collect the debt.

Verified Compl. ¶ 104 [Doc. No. 1]. As to those communications, Plaintiff offers no details as to

why those attempts to collect payment on his loans would meet the high standard required to

state a claim. See also Koufos v. U.S. Bank, N.A., 939 F.Supp.2d 40, 53 (D. Mass. 2013)

(continued threats to collect upon and enforce a legally enforceable debt, including threatened

home foreclosure, insufficient to state a claim of IIED). Count V is DISMISSED.

F.    *Count VI, VII, VIII, IX: Negligence Claims*

The elements of a negligent infliction of emotional distress claim include "(1) negligence;

(2) emotional distress; (3) causation; (4) physical harm manifested by objective

symptomatology; and (5) that a reasonable person would have suffered emotional distress under

the circumstances[.]" Doe v. Trustees of Boston College, 892 F.3d 67, 95 (1st Cir. 2018)

(quoting Payton v. Abbott Labs, 386 Mass. 540, 557, 437 N.E.2d 171, 181 (1982)). To state a

negligence claim, a plaintiff must show that the defendant owed a duty of care to the plaintiff.

Mackenzie v. Flagstar Bank, FSB, 738 F.3d 486, 495 (1st Cir. 2013). Courts have held that under

Massachusetts law, "[t]he relationship between a borrower and lender does not give rise to a duty

of care[.]" Id.; see also Keenan v. Wells Fargo Bank, N.A., 246 F. Supp. 3d 518, 526 (D. Mass.

2017) (finding no duty of care existed between plaintiff-borrower and defendants, including

Wells Fargo, the loan servicer). Where Plaintiff has failed to establish Defendants, as his lenders

9

or, in the alternative, his loan servicers, owed him a duty of care, Plaintiff cannot state a negligence claim, Count VI is DISMISSED.

Plaintiff additionally brings claims for negligent hiring, training, and supervision. Like negligence claims generally, a plaintiff asserting a negligent hiring claim "must establish that the defendant owed the plaintiff a legal duty, and that a breach of that duty proximately caused injury to the plaintiff." Petrell v. Shaw, 453 Mass. 377, 385, 902 N.E.2d 401, 408 (2009). As noted, a lender does not owe a duty of care to a borrower by sole virtue of being Plaintiff's lender. However, employers whose employees are "'brought in contact with members of the public in the course of the employer's business' . . . have a 'duty to exercise reasonable care in the selection and retention of [their] employees.'" Doe v. Bradshaw, 203 F. Supp. 3d 168, 187 (D. Mass. 2016) (quoting Foster v. Loft, Inc., 26 Mass.App.Ct. 289, 290, 526 N.E.2d 1309, 1310 (1988)). "An employer must use due care to avoid the selection or retention of an employee whom he knows or should know is a person unworthy, by habits, temperament, or nature, to deal with the persons invited to the premises by the employer." Id. (quoting Foster v. Loft, Inc., 26 Mass.App.Ct. 289, 290–91, 526 N.E.2d 1309, 1310–11 (1988)); see also Armstrong v. Lamy, 938 F. Supp. 1018, 1046 (D. Mass. 1996). Meanwhile, to establish a claim for negligent training or supervision, "a plaintiff must show that the employer became aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge or reassignment." Helfman v. Ne. Univ., 485 Mass. 308, 326, 149 N.E.3d 758, 775 (2020) (citation omitted).

Plaintiff states that Defendants' employees "[made] wrong decisions" and were "incompetent[,]" and that Defendants failed to use reasonable care to select competent employees. Verified Compl. ¶¶ 127–29 [Doc. No. 1]. He further claims that Defendants' failure

10

to train resulted in employees "making wrong decisions in their interactions with [him,]" and that Defendants should have known that their employees were unfit because they lacked training and supervision. Id. ¶¶ 134, 136, 141.

However, Plaintiff has not identified any wrong decisions by their employees that were known to Defendants. See Foster, 26 Mass. App. Ct. at 291, 526 N.E.2d at 1311 (1988) (finding that knowledge of past acts of impropriety, violence, or disorder is sufficient to find that an employer knew or should have known that an employee was unfit). Further Plaintiff does not address in what manner Defendants' employees' training or supervision was deficient.

Plaintiff further objects that Defendants "treat[ed] Plaintiff like a criminal" and that Defendants knew or should have known that some of their employees "would be likely to be callous[.]" Verified Compl. ¶¶ 67, 69, 127 [Doc. No. 1]. But even read in the light most favorable to Plaintiff, the complaint's statements are conclusory and do not plausibly allege the elements of these claims.

Counts VII, VIII, and IX are therefore DISMISSED.

G.      *Counts X, XI: Libel and Slander*

Under Massachusetts law, claims for slander and libel require a false statement. Phelan v. May Dep't Stores Co., 443 Mass. 52, 55–56, 819 N.E.2d 550, 553 (2004). Plaintiffs alleges generally that Defendants "caused writings to be distributed[,]" "made [untrue] statements in writing to other residents about the plaintiff[,]" and "committed scores of oral defamation[.]" Verified Compl. ¶¶ 146, 147, 151 [Doc. No. 1]. Plaintiff, however, does not state what the allegedly false statements were and why they were untrue. Therefore, Counts X and XI must be DISMISSED.

H.      *Counts XII, XIII: Lanham Act Claims*

Plaintiff brings a claim for false advertising and false representation under 15 U.S.C. § 1125(a) (the Lanham Act). The Lanham Act "was designed to protect consumers and competitors from any duplicitous advertising or packaging which results in unfair competition." Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 310 (1st Cir. 2002).

Plaintiff states that "Defendant has made many false statements . . . about the loan and repayment options and services it advertised to the [Plaintiff,]" Verified Compl. ¶ 156 [Doc. No. 1], but has not alleged with specificity what those false advertisements were. Missing from the Complaint [Doc. No. 1] are any allegations that Defendants used commercial advertising to misrepresent their services, or that they caused Plaintiff any confusion about the affiliation of their services. Because Plaintiff has failed to plead sufficient facts to state a claim under 15 U.S.C. § 1225, Count XII and XIII are DISMISSED.

I.      *Count XIV: Tortious Interference with an Advantageous Relationship*

To state a claim for tortious interference, a plaintiff must allege, *inter alia,* that he or she had a contract with a third party. Hamann v. Carpenter, 937 F.3d 86, 90 (1st Cir. 2019). Establishing a relationship with a third party is essential, because "[a] party cannot 'tortiously interfere' with a contract or business relationship to which he is a party." Sensitech Inc., v. LimeStone FZE, 581 F.Supp.3d 342, 348 (D. Mass. 2022) (citing Psy-Ed Corp. v. Klein, 459 Mass. 697, 716, 947 N.E.2d 520, 537 (2011)). Plaintiff alleges only that he had an advantageous relationship with Defendants and that their employees interfered with that relationship. Verified Compl. ¶ 173–74 [Doc. No. 1]. Because he has not identified a third party with whom his

business relationship was harmed, Plaintiff has failed to state a claim for tortious interference. Count XIV is DISMISSED.[3]

J.        *Count XV: Violation of the FCRA*

Under § 1681s–2(a)(1) of the FCRA, "furnishers may not provide inaccurate information to consumer reporting agencies[.]" Chiang v. Verizon New England Inc., 595 F.3d 26, 35 (1st Cir. 2010). Furnishers additionally "have specific duties in the event of a dispute over furnished information" pursuant to 15 U.S.C. § 1681s–2(b). Id. Only § 1681s-2(b), however, is subject to a private cause of action. Id. To invoke a right under this provision, when a consumer seeks to challenge the accuracy of information in their credit report, a consumer must first notify the relevant Credit Reporting Agency ("CRA") of the dispute. Barrepski v. Cap. One Bank, 439 F. App'x 11, 12 (1st Cir. 2011); Chiang, 595 F.3d at 35. Once the consumer provides such notice, "the CRA then is required to advise the furnisher of the dispute and to provide the furnisher with the relevant information." Barrepski, 439 F. App'x at 12. Only after receiving notice from the CRA is a furnisher required to conduct an investigation; "notice directly from the consumer is not enough." Id.

In his opposition brief, Plaintiff has attached a letter to Equifax, a credit reporting agency, dated November 2, 2024. Pl.'s Opp'n to Def. Nelnet's Mot. to Dismiss Ex. A [Doc. No. 23-1]. This letter, which Plaintiff sent after he brought this action on October 21, 2024, complains that Equifax has not deleted the student loans from his credit report. Id. at ECF 2. But the only

---

[3] Plaintiff argues in his Opposition that Defendants have tortiously interfered with Plaintiff's future potential opportunities. Pl.'s Mem. Opposing Def. Navient's Mot. to Dismiss at ECF 14 [Doc. No. 22]. But this claim is also unsuccessful where he has not alleged any such opportunities here. Singh v. Blue Cross/Blue Shield of Massachusetts, Inc., 308 F.3d 25, 48 (1st Cir. 2002) (noting that a plaintiff "may not speculate about future business relationships when alleging this tort").

13

dispute raised in that letter is a claim that the Bankruptcy Court discharged Thompson's student loans. Id. Where Plaintiff is not claiming here that the loans at issue were discharged by the Bankruptcy Court (and alleges to the contrary that he has not filed for bankruptcy), see Verified Compl. ¶ 41 [Doc. No. 1], this letter does not provide the required notice of the dispute currently before the court.

Accordingly, where Plaintiff has not alleged that he notified any CRA about inaccuracies related to Defendants' reporting, nor that a CRA then notified Defendants, Count XV is DISMISSED.

### K.    *Count XVI: Violation of Massachusetts Fair Credit Reporting Act*

As relevant to this claim, the Massachusetts Fair Credit Reporting Act establishes that

> [e]very person who furnishes information to a consumer reporting agency shall follow reasonable procedures to ensure that the information reported to a consumer reporting agency is accurate and complete. No person may provide information to a consumer reporting agency if such person knows or has reasonable cause to believe such information is not accurate or complete.

Mass. Gen. Laws. ch. 93, § 54A(a). "[T]he FCRA expressly exempts § 54A(a) from its preemptive reach[.]" Leet v. Cellco P'ship, 480 F. Supp. 2d 422, 433 (D. Mass. 2007). Yet, as other sessions of this court have found, the FCRA did not exempt from its provisions Mass. Gen. Laws ch. 93, § 54A(g), which "creates a private cause of action for violations of § 54A(a)." Id.; Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 13 (D. Mass. 2004), aff'd, No. 05-1057, 2005 WL 5493113 (1st Cir. Aug. 23, 2005). Accordingly, Plaintiff's claim is preempted. Moreover, even if Plaintiff's claim was not preempted, Plaintiff's claim still could not succeed. Plaintiff alleges that Defendants reported Plaintiff's loans as overdue, Verified Compl. ¶ 185 [Doc. No. 1], but has not alleged that this report was false. Accordingly, Count XVI is DISMISSED.

14

L.      *Count XVII: Violation of the Federal Fair Debt Collection Practices Act*

"[T]o bring a claim under the FDCPA, a plaintiff must prove that (1) she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants have engaged in an act or omission prohibited by the FDCPA." DeCotis v. Specialized Loan Servicing LLC, 642 F. Supp. 3d 181, 189 (D. Mass. 2022) (citation omitted). The FDCPA's definition for "debt collector" specifically excludes, *inter alia,* any person attempting to collect a debt which was originated by such person, and any person attempting to collect a debt that was not in default at the time it was obtained by such person. 15 U.S.C. § 1692a(6)(F); DeCotis, 642 F. Supp. 3d 181, 189 (D. Mass. 2022). Plaintiff alleges that Defendants originated these loans. Verified Compl. ¶ 9 [Doc. No. 1].[4] Accordingly, Defendants are not debt collectors as defined under the FDCPA. Count XVII is DISMISSED.

M.      *Count XVIII, XIX: Violation of the Massachusetts Debt Collection Statute and Massachusetts General Law Chapter 93A*

Mass. Gen. Laws ch. 93 § 49, titled "Debt collection in an unfair, deceptive or unreasonable manner," provides that:

> [n]o one who is a creditor or an attorney for a creditor, or an assignee of a creditor, of a natural person present or residing in Massachusetts who has incurred a debt primarily for personal, family or household purposes shall collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner.

Mass. Gen. Laws ch. 93, § 49. But Section 49 does not provide a private stand-alone right of action, and claims under Section 49 must be dismissed "except to the extent they form the basis for liability under [Mass. Gen. Laws. ch. 93A.]" O'Connor v. Nantucket Bank, 992 F.Supp.2d 24, 34 (D. Mass. 2014).

---

[4] In the alternative, Defendants would be loan servicers that obtained the loan before Plaintiff defaulted and accordingly would be covered by the exception.

As a prerequisite to a Chapter 93A claim, a plaintiff must allege that they sent a demand letter to the defendant at least thirty days prior to filing a Chapter 93A action. Id. at 38 n.6; Mass. Gen. Laws ch. 93A, § 9(3); McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 217 (1st Cir. 2012). Where Plaintiff does not allege that he sent either Defendant a demand letter, Counts XVIII and XIX must be DISMISSED.

## IV.    Conclusion

For the foregoing reasons, Defendants Navient Solutions, LLC's ("Navient") and Nelnet Servicing, LLC's ("Nelnet") Motions to Dismiss [Doc. Nos. 14 and 16] are GRANTED.

IT IS SO ORDERED.

April 6, 2026                              /s/ Indira Talwani
                                           United States District Judge